

## NUMBER 13-06-469-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

ROBERT S. BENNETT, INDIVIDUALLY
AND THE BENNETT LAW FIRM, P.C.,                                    Appellants,

v.

STEPHEN T. LEAS,                                                              Appellee.

On appeal from the County Court at Law No. 4
of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Vela
Memorandum Opinion by Justice Yañez**

In this interlocutory appeal, appellants, Robert S. Bennett, individually, and the

Bennett Law Firm, P.C. (collectively, "Bennett"), challenge the trial court's denial of their

request to compel arbitration in this legal malpractice action filed against Bennett by

appellee, Stephen T. Leas.[1]  By five issues, appellants contend the trial court erred in (1) determining that some of the matters sought to be arbitrated fell outside the scope of the arbitration agreement; (2) applying the "personal injury" exception to arbitration; (3) finding that Bennett waived the arbitration provision; and (4) finding the arbitration clause unenforceable as against public policy.  We affirm.

## Background

Leas, an attorney, asked Bennett to represent him in connection with several pending grievance matters involving Maria H. Rodriguez.[2]  Leas and Bennett entered into an "Attorney Retainer Agreement" regarding the representation; the agreement contained an arbitration clause.  A few weeks later, Leas asked Bennett to represent him in several other grievances filed against Leas by Gloria Ruel Herrera, Daniel Alvarez, and Candelaria Reyes.[3]

Bennett contends that Leas failed to timely pay his invoices for legal services, and in December 2003, Bennett sought to initiate arbitration.  In March 2004, Leas sued Bennett, requesting a declaratory judgment that Bennett was not entitled to arbitration.  Bennett filed a plea in abatement, requesting abatement of Leas' petition and enforcement

---

[1] The Texas Arbitration Act (TAA) expressly grants interlocutory jurisdiction over denials of applications to compel arbitration.  TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (Vernon 2005); *see In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 778-79 (Tex. 2006) (orig. proceeding).  Appellee asserts that "it is undisputed that only the Texas Arbitration Act is applicable." Appellants do not dispute this assertion.  The arbitration paragraph provides for arbitration "administered by the American Arbitration Association (AAA)" "in accordance with the laws of the State of Texas."

[2] The matters referenced in the Rodriguez "Attorney Retainer Agreement" are "*State Bar of Texas Grievance Matters*; Appeal and Motion to Reconsider – S2080103329; *Maria E. Rodriguez – Stephen T. Leas* and BODA Case No. 26618; *Stephen T. Leas v. Commission for Lawyer Discipline.*"

[3] Although the record contains letters of representation and "Attorney Retainer Agreements" between Bennett and Leas regarding these matters, the agreements are not signed by Leas.

2

of the arbitration agreement.

Following a hearing, the trial court signed an order abating both Leas' lawsuit and Bennett's request for arbitration until the underlying grievance matters were completed. Bennett attempted to appeal the trial court's order; this Court dismissed the appeal for want of jurisdiction.[4] Bennett filed a petition for review with the supreme court, but shortly thereafter, Leas advised the trial court that the underlying matters had been completed. The trial court returned the case to its docket.

On April 18, 2006, Bennett again requested that the trial court order arbitration. Following a hearing, the trial court denied Bennett's request for arbitration. The trial court issued findings of fact and conclusions of law on September 19, 2006. The trial court's findings and conclusions included the following:

> 1. The Plaintiff [Leas] has alleged causes of action alleging legal malpractice, breach of fiduciary duty, fraud and breach of contract against Defendant [Bennett] concerning four (4) separate and independent cases in which Defendant represented Plaintiff. They are known as "Rodriguez," "Herrera," "Alvarez," and "Reyes."
>
> 2. There is no written agreement signed by the parties that involve any issues relating to the "Herrera," "Alvarez," and "Reyes" matters.
>
> 3. The Defendant, in a hearing before this Court on June 10, 2004, had stipulated to this Court that the "Rodriguez" contract only concerned the "Rodriguez" matter and no other matter.
>
> 4. There is a written contract between the parties concerning only the "Rodriguez" matter that does contain an arbitration clause under the Texas Arbitration Act (TAA).
>
> 5. One of the causes of action alleged by the Plaintiff concerning the "Rodriguez" matter is for a personal injury.

---

[4] *See Robert S. Bennett, Individually, et al. v. Stephen T. Leas*, No. 13-04-362-CV, (Tex. App.–Corpus Christi March 17, 2005) (per curiam) (memo op.)(not designated for publication).

. . . .

7.  The contract was not signed by either party's attorney of record.

8.  The Plaintiff was not advised in writing by the Defendant to consult an attorney prior to signing the agreement.

9.  The Plaintiff was not independently represented when the agreement was made between the parties.

10.  The arbitration clause in the 'Rodriguez' matter attempts to limit the liability of the Defendant for malpractice.

. . . .

19.  The Texas Civil Practice and Remedy [sic] Code § 171.001, states that, for an arbitration agreement to be enforceable, that there must exist a written agreement to arbitrate between the parties.  Therefore, there being no written contract with an arbitration agreement that exist[s] between the parties concerning the "Herrera," "Alvarez," and "Reyes" matters, the Defendant is not entitled to compel arbitration on those matters.

20.  The arbitration clause in the "Rodriguez" matter is in violation of the Texas Rules of Professional Conduct, Rule 1.08(g), and as such is against public policy and is therefore unenforceable.

21.  The Defendant has waived any right to arbitrate in the "Rodriguez" matter, by substantially invoking the judicial process resulting in the Plaintiff suffering actual prejudice.

### Standard of Review and Applicable Law

When reviewing by interlocutory appeal an order denying arbitration under the TAA, we apply a de novo standard to legal determinations and a "no evidence" standard to factual determinations.[5]  Under the "no evidence" standard, we view the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that

---

[5] *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 791 (Tex. App.–Houston [14th Dist.] 2007, pet. denied).

4

would support it.[6] We must credit favorable evidence and disregard contrary evidence only if a reasonable factfinder could do so.[7] A legal sufficiency challenge to the findings of fact will not be sustained if there is more than a scintilla of evidence to support the findings.[8] In conducting a factual sufficiency review, appellate courts may set aside a trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust.[9]

Under the TAA, a party seeking to compel arbitration must (1) establish the existence of a valid, enforceable arbitration agreement and (2) show that the claims asserted fall within the scope of that agreement.[10] If the movant establishes that an arbitration agreement governs the dispute, the burden then shifts to the party opposing arbitration to establish a defense to the arbitration agreement.[11] If the trial court concludes the movant has met its burden and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration.[12]

Although courts generally enforce arbitration agreements, a court may not order

---

[6] *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

[7] *Id.*

[8] *Davey v. Shaw*, 225 S.W.3d 843, 849 (Tex. App.–Dallas 2007, no pet.).

[9] *Id.*

[10] *Brooks*, 225 S.W.3d at 791*; Cappadonna Elec. Mgmt. v. Cameron County*, 180 S.W.3d 364, 370 (Tex. App.–Corpus Christi 2005, orig. proceeding) (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding); *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.–Corpus Christi 2003, orig. proceeding)).

[11] *McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex. App.–Houston [14th Dist.] 2007, no pet.).

[12] *Id.*

arbitration in the absence of such an agreement.[13] The parties' agreement to arbitrate must be clear.[14] If one party denies that there is a binding arbitration agreement, the trial court may summarily decide whether to compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and stipulations.[15] When a reviewing court is called upon to decide whether the parties have agreed to arbitrate, it does not resolve doubts or indulge a presumption in favor of arbitration.[16] Instead, it applies standard contract principles to determine whether a valid arbitration agreement exists.[17] Whether there is an enforceable agreement to arbitrate is a question of law and is therefore reviewed de novo.[18]

Determining whether a claim falls within the scope of an arbitration agreement involves the trial court's legal interpretation of the agreement, and we review such interpretations de novo.[19] The burden lies with the party opposing arbitration to show that the claims fall outside the scope of the arbitration agreement.[20]

We will not find error by the trial court and are required to uphold the trial court's

---

[13] *Cappadonna*, 180 S.W.3d at 370 (citing *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994)).

[14] *Id.* (citing *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex. App.–Houston [1st Dist.] 2002, no pet., combined appeal & orig. proceeding)).

[15] *Id.* (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding)).

[16] *In re Bunzl U.S.A., Inc.*, 155 S.W.3d 202, 209 (Tex. App.–El Paso 2004, orig. proceeding).

[17] *Id.*

[18] *D. Wilson Constr. Co.,* 196 S.W.3d at 781; *McReynolds*, 222 S.W.3d at 739; *Cappadonna*, 180 S.W.3d at 370.

[19] *McReynolds*, 222 S.W.3d at 740.

[20] *Id.*

ruling if it is proper on any grounds.[21]

## Analysis

By their first issue, appellants contend the trial court erred in finding that the Alvarez, Herrera, and Reyes matters are not within the scope of the arbitration agreement. Appellants contend that the "trial court's first, second, fourth, and nineteenth findings and/or conclusions . . . are incorrect and should be disregarded."[22] Appellants challenge the legal and factual sufficiency of the evidence supporting the trial court's third finding—that Bennett stipulated to the court that the Rodriguez contract concerned the Rodriguez matter only.

Appellants argue that although the arbitration agreement in the Rodriguez contract does not mention the Alvarez, Herrera, and Reyes matters, those matters are nonetheless covered by the arbitration clause "because they were within the attorney-client relationship of Bennett and Leas." According to appellants, the trial court erred in failing to give full effect to the provision stating that arbitration was applicable to any "controversy, claim, or dispute in the course and scope of the Attorney-Client relationship or arising out of or relating to this Agreement . . . ."

---

[21] *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 702 (Tex. App.–Fort Worth 2006, pet. filed) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43, 41 (Tex. 1998) (requiring us to uphold trial court's evidentiary ruling if it is proper on any grounds); *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995) (holding summary judgment must be upheld if it is proper on any grounds)).

[22] In their brief, appellants refer to the trial court's findings of fact and conclusions of law issued on August 2, 2006 and on September 18, 2006. The court's August 2, 2006 findings and conclusions are included in its September 18, 2006 findings. Therefore, for ease of reference, we refer to the September 18, 2006 findings.

As to the court's third finding that Bennett stipulated at a June 10, 2004 hearing[23] that the Rodriguez contract concerns only the Rodriguez matter, appellants assert that the finding is "simply not true." According to appellants, Bennett stipulated that "the contract in question mentions only the Rodriguez matter and no other matters," but made no stipulation regarding whether the arbitration clause was broad enough to encompass the additional matters.

We begin with appellants' challenge to the legal and factual sufficiency of the evidence supporting the court's third finding that Bennett stipulated at the June 10, 2004 hearing that the Rodriguez contract concerns only the Rodriguez matter.[24] At the hearing, appellee and Robert Bennett provided argument and testimony:

> [Robert Bennett]: . . . To go back to testify now about these, all the cases, by sworn answer, Mr. Leas agrees that I was hired to represent him on the Rodriguez case. The Rodriguez case was where there was a signed contract.
>
> Then, as we went along in our relationship, I was also, besides the Rodriguez case, asked to represent him—I'll try to get these—all four matters straight—Herrera, Alvarez-Reyes—I'm sorry. Herrera is the second. Alvarez, slash, Reyes (Alvarez/Reyes) is the third, and Cuellar is the fourth.
>
> And Mr. Leas testifies that he asked me to represent him besides the Rodriguez matter in the other three. He states that he never objected to the way that those four matters were billed. He never objected to them being billed under one invoice number prior to the lawsuit he filed. He testifies that

---

[23] The reporter's record reflects that the hearing occurred on June 9, 2004. The hearing addressed appellee's plea to abate appellants' suit for collection of attorneys' fees pending disposition of the underlying matters. The hearing also addressed appellants' motion to transfer venue (of appellee's malpractice suit) and motion to abate (same) based on the arbitration agreement.

[24] We note that appellants have specifically challenged the legal and factual sufficiency of the evidence supporting *only* the trial court's third finding. With regard to the remaining findings, appellants simply argue, without reference to any legal or factual sufficiency standard, that this Court "should disregard" the trial court's findings and conclusions. Appellee does not raise any challenge as to whether appellants have adequately briefed their issues, and we do not address the issue.

8

he never objected to all matters being billed together. He never made a written request at any time that these matters be separated out. He never requested separate invoices. He never separated out his payments, or the payments that he sent were for all the works [sic] provided. And, as of today, he has provided no documentation to me or to the Court in any way contradicting our Motion to Transfer Venue.

. . . .

[Leas]: Your Honor, once again, the basis of my objection was that he's [Robert Bennett] attempting to make [the Rodriguez contract] the basis of the agreement on several different contracts, which simply cannot be done. I denied that at—in No. 3, Request for Admissions there, I denied that they were the same terms, the oral contracts, as the written contracts.

Now, if, one, it be stipulated that this is[25] as to the Rodriguez matter and the Rodriguez matter only, that's what the contract says. But to the other matters, no, sir, they're not.

[Court]: Only—as to Rodriguez only?

[Leas]: Right.

[Court]: Not the other people?

[Leas]: Right.

[Court]: Reyes, Cuellar, and . . .

[Leas]: Yes, Your Honor. There is no written contract on those issues.

[Court]: Okay. Mr. Bennett?

[Robert Bennett]: Your Honor, I accept that. I'd like to go through and make sure that the other requests are also either agreed or the Court takes judicial notice.

---

[25] The record shows that the "this" referred to is a request for admission from appellants to Leas, stating:

Admit that the last sentence of the second paragraph pf Part VIII of the contract states, 'Our dispute shall be determined by arbitration in Houston, Texas, before a solo arbitrator, in accordance with the laws of the State of Texas for agreements made in and to be performed in Texas.'

We conclude that appellants' argument before the trial court is essentially the same as their argument on appeal: that the Rodriguez contract is the only "signed contract," but the arbitration agreement should be construed as applicable to the additional matters because appellee "never objected" to the matters being treated collectively for billing and payment purposes. We also conclude that the third finding—that appellants stipulated that the Rodriguez contract only "concerned" the Rodriguez matter—does not necessarily preclude appellants' argument that although the arbitration agreement specifically pertained or "concerned" only the Rodriguez matter, it should nonetheless be interpreted to encompass the additional matters. After reviewing the record, we conclude there is more than a scintilla of evidence to support the trial court's third finding.[26] We also cannot say that the third finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust.[27]

We now turn to appellants' argument that the trial court erred in finding that the Alvarez, Herrera, and Reyes matters are not within the scope of the arbitration agreement. Appellants argue that because the additional matters are within their attorney-client relationship with Leas, and the agreement applies to any dispute in the course and scope of the attorney-client relationship, the matters are subject to the arbitration agreement. We are unpersuaded by appellants' argument.

The initial paragraph of the Rodriguez contract states:

The purpose of this agreement is to set forth our understanding and agreement ("Agreement"), pursuant to which our law firm, THE BENNETT

---

[26] *See Shaw*, 225 S.W.3d at 849.

[27] *See id.*

10

LAW FIRM ("Firm"), has agreed to represent STEPHEN T. LEAS ("Client" or "you") in the following referenced matters: *State Bar of Texas Grievance Matters;* Appeal and Motion to Reconsider – S2080103329; *Maria H. Rodriguez – Stephen T. Leas* and BODA Case No. 26618; *Stephen T. Leas v. Commission for Lawyer Discipline* ("Matters")[.] We have, of course, discussed these Matters with you previously, but it is prudent that our understandings be documented to prevent any confusion or misunderstanding in the future.

Paragraph "C" in section "V" of the contract states:

The legal fees agreed upon herein are for representation of the Client in the above referenced Matters and do not include Firm's legal services in any other matter. In the event that representation is required in any other court or regarding any other matter, a new agreement must be made between the Firm and the Client.

Section "VIII," entitled "Arbitration," states, in pertinent part:

To further clarify our agreement on arbitration, arbitration would apply to any controversy, claim or dispute in the course and scope of the Attorney-Client relationship or arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate. Our dispute shall be determined by arbitration in Houston, Texas before a solo arbitrator, in accordance with the laws of the State of Texas for agreements made in and to be performed in Texas.

"Disputes" shall include, without limitation, those involving fees, costs, billing, and breach of ethical or fiduciary duties.

Appellants submitted the affidavit of Robert Bennett, which was attached to appellants' Plea in Abatement and Motion to Transfer Venue. In the affidavit, Bennett states that Leas "had the Firm take on the additional cases, and representation in these cases was undertaken on the mutual consent of both parties that the representation in all cases would be handled per the terms of the original contract."

The trial court found that there was no written agreement between the parties regarding the Herrera, Alvarez, or Reyes matters (finding number two). It also found that

11

because there was no written agreement to arbitrate as to these parties, as required by section 171.001 of the civil practice and remedies code,[28] appellants were not entitled to arbitration on those matters.  We agree.

The record contains no evidence of any written agreements to arbitrate regarding the Herrera, Alvarez, or Reyes matters (and appellants do not contend that such written agreements exist).  The statute does not provide that an arbitration agreement is enforceable if it is based on the mutual verbal consent of the parties.  We hold the trial court did not err in concluding that appellants were not entitled to compel arbitration with regard to the Herrera, Alvarez, and Reyes matters.  We overrule appellants' first issue.

### Personal Injury Exception

In their second and third issues, appellants contend the trial court erred in applying the "personal injury" exception in section 171.002(a)(3) of the civil practice and remedies code because (1) a legal malpractice claim is not a claim for "personal injury" (second issue), and (2) Bennett and Leas were both attorneys at the time they signed the agreement (third issue).  Appellants urge this Court to "disregard" the trial court's fifth through ninth findings of fact and conclusions of law.

As appellants note, this Court has held that a claim for legal malpractice is a claim for personal injury within the meaning of section 171.002(a) of the TAA.[29]  The TAA does

---

[28] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.001(a) (Vernon 2005) (providing that a written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that:  (1) exists at the time of the agreement; or (2) arises between the parties after the date of the agreement).

[29] *In re Godt*, 28 S.W.3d 732, 739 (Tex. App.–Corpus Christi 2000, orig. proceeding); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(3) (Vernon 2005).

not apply to a claim for personal injury unless each party to a claim, on the advice of counsel, agrees to arbitrate in writing, and the agreement is signed by each party and each party's attorney.[30]  The trial court found that (1) one of appellee's claims in the Rodriguez matter was a claim for personal injury; (2) neither party's attorney signed the agreement; (3) appellee was neither advised in writing to consult an attorney before signing the agreement nor independently represented when signing the agreement.

Although appellants urge us to "disregard" the trial court's finding that the Rodriguez contract was not signed by either party's attorney of record, the record is clear that it was not.  The only signatures that appear on the contract are those of Leas and Robert Bennett.  Appellants argue that even if we find that appellee's malpractice claim is a claim for personal injury, the arbitration clause nonetheless complies with the TAA's requirements because both parties were attorneys.[31]  The statute, however, provides that arbitration does not apply to personal injury claims unless "each party to the claim, on the advice of counsel, agrees in writing to arbitrate" and "the agreement is signed by each party *and each party's attorney*."[32]  The statute does not provide an exception if the parties are attorneys.[33]  We hold the evidence is legally and factually sufficient to support the trial

---

[30] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(3), (c).

[31] Leas contends that at the time he signed the Rodriguez contract, he was not licensed to practice law in the State of Texas.  We need not address this argument.

[32] *See id.* at § 171.002(c) (emphasis added).

[33] We note that appellants' argument—that a party meets the requirement if he/she is an attorney—is best directed to the Texas Legislature.  We also note that in this case, there is no evidence suggesting that either party (both of whom were lawyers) was acting in his capacity as a lawyer representing himself as a party.  We express no opinion regarding whether any such evidence could satisfy the statutory requirements.

13

court's finding that "[t]he contract was not signed by either party's attorney of record." We overrule appellants' third issue. Thus, if appellee's legal malpractice claim is a claim for personal injury, the trial court did not err in denying arbitration because the Rodriguez contract does not comply with section 171.002(c).

Appellants note that since this Court's holding in *Godt*, three of our sister courts have held that a legal malpractice claim is *not* a claim for personal injury.[34] In *In re Hartigan*, the San Antonio court relied on a "plain reading of section 107.002" to conclude that a legal malpractice claim "is not specifically prohibited from arbitration."[35] The *Hartigan* court criticized our reliance on the cases cited in *Godt*, and argued that there is nothing in the legislative history of section 107.002 to show that the legislature intended for the personal injury provision to extend to legal malpractice claims.[36] In *Hartigan*, the plaintiff's legal malpractice claim against her attorneys arose from her representation in a divorce proceeding.[37]

In *Miller v. Brewer*, the Amarillo court followed the rationale of the *Hartigan* court in "refus[ing] to hold that a legal malpractice suit [is] *per se* one for personal injuries."[38] The *Miller* court reasoned that the plaintiff's legal malpractice claim arose "out of a suit for

---

[34] *See Taylor v. Wilson*, 180 S.W.3d 627, 631 (Tex. App.–Houston [14th Dist.] 2005, pet. denied); *Miller v. Brewer*, 118 S.W.3d 896, 898 (Tex. App.–Amarillo 2003, no pet.) (per curiam); *In re Hartigan*, 107 S.W.3d 684, 690 (Tex. App.–San Antonio 2003, orig. proceeding).

[35] *In re Hartigan*, 107 S.W.3d at 690.

[36] *See id.*

[37] *See id.* at 687.

[38] *Miller*, 118 S.W.3d at 898.

14

economic losses as a result of employment discrimination," and was therefore—like the malpractice claim in *Hartigan* arising from representation in a divorce proceeding—"not a suit for personal  injuries" within the purview of the statute.[39]

Finally, in *Taylor v. Wilson*, the Fourteenth Court of Appeals reached the same conclusion as the *Hartigan* and *Miller* courts in holding that a legal malpractice claim is not a claim for personal injury.[40]  In *Wilson*, the court noted that the plaintiff's "underlying claim was for economic losses rather than for personal injury."[41]  The *Wilson* court also relied on the legislative history of the TAA, which, according to the court, "reveals the legislature intended to restrict the scope of the personal injury exception to *physical* personal injury."[42]

In his concurring opinion in *Wilson*, Justice Frost noted that "[t]he term 'personal injury' has been used in both a narrow sense of 'bodily injury' and a broader sense, meaning a personal wrong, including libel, slander, malicious prosecution, assault, and false imprisonment, as well as bodily injury."[43]  Justice Frost concluded that a legal malpractice claim is not a personal-injury claim under *either* the narrow or broad definition because it "does not involve bodily injury, and it does not involve injuries to rights regarding the person."[44]  Justice Frost also criticized the majority's legislative history argument, noting

---

[39] *Id.* at 898-99.

[40] *Taylor*, 180 S.W.3d at 631.

[41] *Id.* at 630.

[42] *Id.*

[43] *Id.* at 632 (Frost, J., concurring).

[44] *Id.* at 632-33.

that it relies solely on a statement expressing an opinion of the author of a comment, and is therefore, "not part of the legislative history at all."[45]

In *Godt*, we cited *Sample v. Freeman*[46] and *Estate of Degley v. Vega*[47] in support of our holding that a legal malpractice claim is a claim for personal injury within the meaning of section 171.001(a).[48] We recognize that our sister courts have declined to follow *Godt*. However, absent guidance from the supreme court on this issue, we decline to abandon our earlier precedent.[49] We conclude the trial court did not err in finding that one of appellee's claims in the Rodriguez matter (legal malpractice) was a claim for personal injury. We overrule appellants' second issue.

Because we have determined that appellee's legal malpractice claim is a claim for personal injury within the meaning of section 171.001(a), and the Rodriguez contract does not comply with the statutory requirements of section 171.001(c), we hold that the trial court did not err in denying arbitration. Accordingly, we AFFIRM the trial court's order

---

[45] *Id.* at 634 (citing Robert J. Kraemer, *Attorney-Client Conundrum: The Use of Arbitration Agreements for Legal Malpractice in Texas*, 33 ST. MARY'S L.J. 909, 933 n.139 (2002).

[46] *Sample v. Freeman*, 873 S.W.2d 470, 476 (Tex. App.–Beaumont 1994, writ denied).

[47] *Estate of Degley v. Vega*, 797 S.W.2d 299, 302-03 (Tex. App.–Corpus Christi 1990, no writ).

[48] *Godt*, 28 S.W.3d at 738-39.

[49] We note that this issue is currently before the supreme court. In the appellants' brief in *Chambers, et al. v. O'Quinn*, 2007 TX S. Ct. Briefs LEXIS 592, **15, appellants state:

> The Supreme Court should exercise jurisdiction to hear and decide the most important issues of whether a compulsory arbitration clause, in an attorney-client contingency fee contract involving a personal injury/property damage case is enforceable, and whether, incidental to that overriding issue, whether the Petitioners "intentionally, voluntarily, intelligently and knowingly" waived their constitutional right to a trial by jury.

denying appellants' request to compel arbitration.

Because we are required to uphold the trial court's ruling if it is proper on any grounds,[50] we need not address appellants' remaining issues.[51]

_____
LINDA REYNA YAÑEZ,
Justice

Dissenting Memorandum Opinion
by Justice Rose Vela.

Memorandum Opinion delivered and
filed this the 26th day of June, 2008.

---

[50] *See Loudermilk*, 208 S.W.3d at 702.

[51] *See* TEX. R. APP. P. 47.1.